UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald De SIMONE and Philip Caruso,
Defendants-Appellants.

No. 71–1859.

United States Court of Appeals,
Fifth Circuit.

Dec. 16, 1971.

Rehearings Denied Jan. 7, 1972.

Lucius M. Dyal, Jr., Tampa, Fla. (Court-appointed), for Donald De Simone.

Arnold D. Levine, Tampa, Fla., for Philip Caruso.

John L. Briggs, U. S. Atty., Hugh N. Smith, Asst. U. S. Atty., Claude H. Tison, Jr., Tampa, Fla., for plaintiff-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

BELL, Circuit Judge:

This appeal is from judgments of conviction entered on jury verdicts finding defendants guilty of conspiring to violate 18 U.S.C.A. § 495 in the forging of endorsements thereon in uttering United States savings bonds, and also of aiding and abetting another in forging the endorsements and uttering the bonds.

The facts disclose a modus operandi of passing stolen bonds by having someone pose as the true owner of the bonds. Appellants traveled from New York to Miami where they stayed several days and passed numerous bonds. The operation was then transferred to the Tampa area. The participants, according to the evidence, were appellants De Simone and Caruso together with a female companion, Mary Ann Tarbell, whose role was to impersonate the owner of the bonds, Mrs. Harkins. Mr. and Mrs. Harkins were the true owners of the stolen bonds.

There are three assignments of error peculiar to De Simone's appeal. One has to do with the claimed insufficiency of the evidence. Another claim is that he was denied a speedy trial. The third is that he was denied the effective assistance of counsel.

■ There is one assignment of error peculiar to Caruso's appeal. He urges that the trial court erred in refusing to instruct that alibi evidence had been presented by both defendants. This instruction was given but the word defendant was used in the singular throughout the charge until the end when the jury was instructed that every portion of the charge was applicable to each defendant. It follows that this assignment of error is without redeeming merit.

■ This is likewise true as to De Simone's contention that the evidence was insufficient. The fact is that there was an abundance of evidence of guilt.

■ There is no merit in the contention that De Simone was denied a speedy trial. Any delay was at his instance.

■ The argument that De Simone was denied the effective assistance of counsel admittedly has no support in the record. The proposal is to make out the claim by affidavits. The defendants were represented by one retained lawyer. De Simone's claim is that Caruso paid the lawyer and that the defense was oriented in favor of Caruso. This is sheer conjecture since the record shows that they were in the very same status from the standpoint of presence and participation in the illegal activity along with Mary Ann Tarbell, the chief prosecution witness and a named co-conspirator. It is urged that additional alibi witnesses could have been called for De Simone but that this would somehow have disparaged Caruso's defense. It is plain, however, that these additional witnesses would have been merely cumulative to the five alibi witnesses who were called. The claim of denial of the effective assistance of counsel is thus also without merit.

■ There are three assignments of error common to the defendants. First, they urge that it was error for the trial court to deny their motion to inspect the grand jury testimony of Mary Ann Tarbell. The government admits that at the time of the trial, the attorney for the United States was not aware of the 1970 amendment to the Jencks Act, 18 U.S.C.

A. § 3500(b) and (e) (3).[1] This amendment makes recorded grand jury testimony subject to discovery. Thus the government concedes that it was error, at least technically, for this request for inspection to be denied. However, the government argues, and we agree, that this error was harmless.

The sole basis for requesting the grand jury testimony in question was to compare dates given in that testimony with dates that Mary Ann Tarbell had mentioned in an earlier statement given to agents of the Secret Service. On trial, she admitted the incorrectness of a date in the earlier statement, saying that it was a mistake. While denying defendant's request for inspection, the trial court did make two in camera inspections of the grand jury testimony and found that there was no inconsistency between that testimony and her trial testimony. Our review of the record and the grand jury testimony confirms the court's findings. Our view is that any error in not allowing inspection of the grand jury testimony was harmless.

■ Defendants also contend that the court erred in its instructions on intent with the effect that a burden was wrongfully placed on the defendants to produce evidence and overcome a presumption of guilt. An instruction identical to that complained of was examined by this court in United States v. Jenkins, 5 Cir., 1971, 442 F.2d 429, 437–38. We there held that any harmful effect from this instruction was vitiated by a curative instruction. The case here is distinguished only by the fact that the curative instructions of the type in *Jenkins* were given four times instead of

once. Accordingly, we find this assignment of error to be without merit.

Finally appellants contend that in two instances the court erred in not excluding from evidence documentary items which the government did not produce as required by the court's discovery order. The first instance pertains to reports of handwriting analysis which were used to connect defendants at a given time to the localities where the crimes were committed. The record shows that both defendants were held in contempt of court for not complying with the court's order to produce handwriting samples for analysis. See United States v. Rudy, 9 Cir., 1970, 429 F.2d 993. The contempt judgment was given after the trial had been in progress for eight days. The handwriting expert was thus compelled to make his analysis from limited samples already in the government's possession. His analysis was not completed until after the trial commenced and he made no written report of the analysis. Upon learning the results of the analysis, however, the government attorney immediately made the results known to defense counsel. Only at this point was the government able to comply with the court order to produce the results of scientific tests.

■ Defendants go further and argue that the expert's testimony should have been excluded because the government failed to produce the handwriting samples that were used for the analysis. This argument would be tenuous to begin with, but combined with the defendants' contemptuous conduct and the government's last minute resort to whatever samples it could procure, it was not an

1. 18 USCA § 3500(b) and (e) (3).
   Demands for production of statements and reports of witnesses
   (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter

as to which the witness has testified . . .

. . . . .

   (e) The terms "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States means—
   (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

abuse of discretion for the court to admit the expert testimony into evidence.

The second instance of alleged government failure to comply with the discovery order pertains to the report of fingerprint comparisons. This report was given to defense counsel after trial opened but three days prior to the opening of the defense. The government also argues that this report, as well as the handwriting samples discussed above, was made available to the defense at an earlier date. However the record provides no support for this contention, the absence of which forecasts a need on the part of the government to accompany disclosure with an evidentiary record of admissible quality. Nonetheless, in that the fingerprint reports were made available to the defense in time for their inspection and use, we do not find an abuse of discretion in the admission of these reports by the lower court. There was no showing of prejudice to the substantial rights of defendants. As we stated in United States v. Saitta, 5 Cir., 1971, 443 F.2d 830, 831, cert. denied, 92 S.Ct. 269:

"Appropriate relief for a violation of the discovery rules lies within the sound discretion of the district court, Gevinson v. United States, 5 Cir., 1966, 358 F.2d 761, 766; Ginsberg v. United States, 5 Cir., 1958, 257 F.2d 950, 956, but we do not reach the question of an abuse of discretion here. It suffices to say that an error in administering the discovery rules is not reversible absent a showing that the error was prejudicial to the substantial rights of the defendant. Hansen v. United States, 8 Cir., 1968, 393 F.2d 763, 770. There is no showing of such prejudice here."

Finding no prejudicial error as to either defendant, the judgments of conviction are affirmed.

Affirmed.