**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Willie JAMES, Jr., Defendant-Appellant.
No. 73-2763.**

United States Court of Appeals,
Fifth Circuit.
June 5, 1974.

John W. Coleman, Mobile, Ala., for defendant-appellant.

Charles S. White-Spunner, U. S. Atty., Irwin W. Coleman Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before GODBOLD, SIMPSON and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Willie James, Jr. was indicted in two counts for distributing and possessing with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1).[1] The two counts arose from transactions between the appellant and a government informer, Sam Battles, on October 16 and October 27, 1972. A jury found James guilty under both counts, and we affirm those convictions.

Because Battles was dead at the time of trial,[2] the government's case against James rested largely on the testimony of George J. Cazenavette, a special agent of the Bureau of Narcotics and Dangerous Drugs. Through Battles, Cazenavette arranged via telephone the heroin purchases which underlie this prosecution, and acting under cover, he was present when the sales occurred. He testified in detail concerning both transactions, and this testimony was corroborated in significant particulars by the testimony of other law enforcement officials. The evidence is more than adequate to support the jury's decision.

■■ The only significant issue on appeal[3] arises from the admission into evidence of two tape recordings, made when Battles talked to appellant on the telephone to set up the transactions. The most troublesome problem is the United States Attorney's failure to disclose the existence of the tapes at the Omnibus Hearing held on April 18, 1972. There is no question that under this circuit's interpretation of Rule 16(a)(1)[4] James was entitled to discov-

---

1. "(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

2. Battles was to appear as a government witness in a number of drug cases scheduled for trial in Mobile beginning on Monday, May 21. However, he was shot and killed at approximately 2:30 A.M. that morning as he worked at his filling station in Mobile. *See* United States v. McKinley, 493 F.2d 547, 549 n. 1 (5th Cir., 1974).

3. Appellant's argument concerning the delay of four and one-half months between the criminal acts and his indictment is foreclosed by United States v. Judice, 457 F.2d 414, 415 (5th Cir., 1972), cert. den., 409 U.S. 886, 93 S.Ct. 104, 34 L.Ed.2d 142. James also contends that the trial court erred in not granting a continuance or a change of venue because of adverse publicity related to Battles' death. In United States v. Robinson, 487 F.2d 340 (5th Cir., 1973), a similar argument was made on the basis of the same publicity, and we rejected it, saying, "Robinson's claim of prejudicial pretrial publicity is without merit. The facts in the case before us simply do not show any prejudice to Robinson which would necessitate a reversal of the trial court's exercise of sound discretion." Appellant's claim that the requirements of *Miranda* were violated is al-

so without merit. *See* United States v. Frazier, 434 F.2d 994 (5th Cir., 1970).

The trial court also admitted a statement made by defendant which contained incriminating admissions, although this statement, like the tape recordings, was not disclosed at the omnibus hearing. On learning of this statement immediately prior to trial, defense counsel stated: "Judge, the matter of the statement doesn't create any concern to me at this point." In view of this and counsel's failure to object to admissibility on the basis of non-disclosure at the time of trial, we find no error in the court's action. But, as our textual discussion of the government's failure to comply with the discovery rules will indicate, this decision should in no way be construed as an approval of the government's conduct.

4. At the time of trial Federal Rule of Criminal Procedure 16(a) read in pertinent part as follows:
    "Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, . . . ."
In Davis v. United States, 413 F.2d 1226, 1231 (5th Cir., 1969), we held that a record-

ery of the tapes. Davis v. United States, 413 F.2d 1226, 1231 (5th Cir., 1969); *accord* United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642 (1971); United States v. Isa, 413 F.2d 244 (7th Cir., 1969). That the U. S. Attorney was unaware of the tapes at the time of the hearing because they were in the possession of Agent Cazenavette does not excuse his affirmative misrepresentation.[5]

█ Moreover, "[r]ule 16(g) imposes a continuing obligation on a party who already complied with a discovery order. If at any later time, prior to or at the trial, he finds additional material previously requested and ordered that is subject to discovery under the rule, he must promptly notify the other party or his attorney or the court of the existence of the additional material." 1 C. Wright, Federal Practice & Procedure, § 259, at 532 (1969). Thus, when government counsel received the case file from the B. N. D. D. office in Washington at least two weeks prior to trial and thereby learned of the tape recordings, he should have notified appellant's attorney or the court, and his failure to do so is inexcusable. We fully agree with the observation in United States v. Baum, 482 F.2d 1325, 1331 (2nd Cir., 1973), that "[o]rdinarily it is disclosure, rather than suppression, that promotes the proper administration of criminal justice." In addition to helping expedite the trial of criminal cases, an omnibus hearing facilitates discovery thus reducing, in the spirit of the criminal discovery rules, the opportunity for trial by ambush. This salutary function cannot be aborted by allowing a United States

Attorney to avoid discovery by pleading ignorance of discoverable material which is in the possession of another governmental agency; especially is this true when both are supposedly working together to apprehend and convict those engaged in the distribution of illegal drugs.

█ Our distaste for the government's conduct does not, however, warrant a reversal of the case at bar.[6] We have previously held that "an error in administering the discovery rules is not reversible absent a showing that the error was prejudicial to the substantial rights of the defendant." United States v. Saitta, 443 F.2d 830, 831 (5th Cir., 1971), cert. den., 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 250; United States v. DeSimone, 452 F.2d 554, 557 (5th Cir., 1971); *accord* United States v. Dowdy, 455 F.2d 1253, 1255 (10th Cir., 1972); United States v. Cole, 453 F.2d 902, 904 (8th Cir., 1972); United States v. Allsenberrie, 424 F.2d 1209, 1215 (7th Cir., 1970). *See also* Pierce v. United States, 414 F.2d 163, 169 (5th Cir., 1969), cert. den., 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425. A thorough review of the record in this case leaves us convinced that the prejudice, if any, flowing from the government's failure to produce the tapes until the time of trial was insubstantial.

Defense counsel was informed immediately prior to trial about the tapes and the government's intent to use them in its case in chief. A recess was then granted in order for both the court and the defense to consider the applicable law. Subsequently, a hearing was held outside the jury's presence for the gov-

---

ed conversation between an accused and a government informer was a statement within the meaning of this rule. At the omnibus hearing the government stated that it did not have any such statements. The government's argument that there was no misrepresentation because of its statement that there was no electronic surveillance in this case is thus beside the point. Clearly, "by the exercise of due diligence" government counsel would have become aware of the recordings.

5. *See* note 4, *supra*.

6. It should be noted that the issue in this case is not whether the government violated the commands of Brady v. Maryland, 373 U. S. 83 (1963). The evidence in the tapes was not favorable to the accused as either direct or impeaching evidence. *See* United States v. Harris, 458 F.2d 670, 675 (5th Cir., 1972). *Compare* Davis v. Heyd, 479 F.2d 446 (5th Cir., 1973) (Coleman, J., dissenting).

ernment to establish the foundation for admitting the tapes into evidence. Once the court was satisfied as to the admissibility of the tapes, that they were authentic and that Battles had consented to have his conversations with James recorded,[7] the trial proceeded. Defense counsel continued to object to admissibility on these grounds, but he did not argue that he was unprepared to meet the evidence contained in the tapes. *See* United States v. Kelly, 420 F.2d 26, 29 (2nd Cir., 1969). Nor did counsel seek either a longer recess or a continuance, *see* United States v. Avila, 443 F.2d 792, 795 (5th Cir., 1971), and he acquiesced in the continuation of the trial. And finally, the court was not asked pursuant to Rule 16(g) to refrain from admitting the tapes as a sanction for the government's failure to comply with the discovery rules. *See* United States v. Good, 410 F.2d 1217 (5th Cir., 1969), cert. den., 397 U.S. 1002, 90 S.Ct. 1131, 25 L. Ed.2d 413.

In conclusion the record fails to disclose the type of prejudice that would require our granting appellant a new trial. *Compare* United States v. Baum, 482 F.2d 1325, 1331 (2nd Cir., 1973); United States v. Kelly, *supra,* 420 F.2d at 29; United States v. Miller, 411 F.2d 825, 832 (2nd Cir., 1969); United States v. Padrone, 406 F.2d 560, 561 (2nd Cir., 1969). Considering the damaging character of the tapes, counsel did an admirable job of countering this evidence during cross-examination of Agent

Cazenavette. And, although the contents of the tapes bolstered by corroboration the agent's previous testimony, they did not contain facts not previously revealed. *See* United States v. Miller, *supra.* It is therefore unnecessary to afford James a new trial for the purpose of giving him a fair opportunity to respond to this evidence. *See* United States v. Kelly, *supra.* Reiterating, we hold only that in the particular circumstances of this case the government's failure to comply with the discovery rules until the time of trial does not amount to reversible error.

Affirmed.

---

7. That Battles consented to have the conversations recorded was established by the testimony of Agent Cazenavette. Appellant's claim that this testimony was insufficient to establish consent is foreclosed by United States v. Rangel, 488 F.2d 871, 872 (5th Cir., 1974). We there stated:

"Appellant, Israel Rangel, contends that the government did not carry its burden of showing that co-defendant Murray voluntarily consented to the government's interception of the conversation. We disagree. We think that there was sufficient evidence on the record to justify the District Court's conclusion that Murray did voluntarily consent to the recording. Murray was unavailable to testify. The Government produced one of the Customs

agents who was present who testified that Murray had been given his Miranda warnings when taken into custody, that he asked Murray whether he had his permission to tape the telephone call to Rangel and Murray replied "yes", and that Murray was shown all of the taping equipment before the call was placed.

"We reject Appellant's contention that the Government did not present a detailed enough description of the events in the Customs Office preceding the telephone call to warrant a finding of voluntary consent. Appellant had full opportunity to cross-examine the Customs agent who testified."

*See also* United States v. Bonanno, 487 F.2d 654, 658 (2nd Cir., 1973).